BENJAMIN L. WOLCOTT v. ALFRED H. HAGERMAN.

In an action brought by a surety for contribution, against a cosurety upon a promissory note, where the defendant for his indemnification has received property from the principal debtor, which property has been turned into money and applied in part payment of a judgment entered upon the note, the money so applied must be considered as a payment made by the principal, and the defendant is liable for an aliquot portion of the balance.

This cause was tried in the Monmouth Common Pleas and resulted in a verdict for the defendant. The plaintiff has brought the judgment entered thereon into this court by writ of error.

Argued at June Term, 1888, before Justices SCUDDER, DIXON and REED.

For the plaintiff in error, *James Steen.*

For the defendant, *J. Clarence Conover.*

The opinion of the court was delivered by

REED, J. The record brought before us discloses the following facts : A promissory note for the payment of the sum of $1000, payable to one Elizabeth Van Benthuysen, had been made by five persons, each one signing as a maker. Wolcott, the plaintiff, was one of the makers. Alfred H. Hagerman, the defendant, was another. His son, Joseph G. Hagerman, was another. These three, with Abram Osborne and Robert T. Smith, constituted the five makers of the note which they jointly and severally promised to pay.

The plaintiff claimed that after the maturity of the note, and it had been put in judgment, he paid upon the same the sum of $426.71. That sum, with interest thereon, he sues for in the present action. The declaration contains the common counts in an action of *assumpsit*, and to it is annexed a bill of particulars claiming from the defendant the above-mentioned sum, with interest thereon, the amount paid on Elizabeth Van Benthuysen's judgment.

The claim for money paid is the proper style of action, whether the claim is made by a surety against a principal or is directed against a cosurety.

The principal contention on the part of the plaintiff is that as between the parties who signed their names as makers of the note two were principals, namely, Alfred H. Hagerman and his son, Joseph G. Hagerman. The remaining three were admittedly sureties only. The plaintiff, as a surety who had paid money upon the Bentheysen judgment, would, as against the defendant, if the latter was a principal, be entitled to recover the full amount paid, with interest. If defendant, however, was but a surety upon the note, he would in no event be liable for more than his aliquot portion of the judgment. His contention on the trial was that he was not a principal, but was a surety, and that he had already paid upon the judgment more than his share. He claimed that the payment had been made through the instrumentality of an execution issued upon the Bentheysen judgment, and a sale of defendant's property under this writ, by which sale

was realized the sum of $750, which was applied in the payment, *pro tanto*, of the judgment.

It was proven on the trial that a bill of sale had been made to the defendant by his son, of certain chattels, and that it was these chattels that were sold, by which sale the $750 just mentioned was raised and applied.

The main effort of the plaintiff on the trial, so far as the meagre record of the proceedings discloses, was to fix upon the defendant the character of a principal in the transaction.

The first assignment of error is grounded upon an exception to the ruling of the trial court in excluding evidence tendered by the plaintiff as tending to show that the defendant was a principal, and not a surety upon the note. Just before the court made the ruling which is thus complained of, the plaintiff had testified that after he, the plaintiff, had been sued on the Bentheysen note he saw the defendant, and that the defendant offered to give him a deed for a certain house and lot, before seven o'clock the next morning, as security. He testified further that the next morning the defendant told him that he was too old to take the deed. Plaintiff further testified that the same property was afterwards conveyed to one Joseph Barclay. At this point the plaintiff's counsel offered the record of a deed from Alfred H. Hagerman to Joseph Barclay. This offer was overruled, and it is this ruling that is attacked.

I am at a loss to conceive how the presence of this deed could have aided the jury in solving the question whether the defendant was a principal or a surety upon the note. The offer by the defendant to make a deed to the plaintiff may have had some significance upon the point mooted, but the fact that the deed was not so executed, but that instead of the deed being made to the plaintiff it was made to a third party entirely disconnected from the transaction in question, was entirely irrelevant.

The second assignment of error is that the court overruled the record and transcript of evidence in the case of Wilbur A. Heisley, receiver, against Abram Osborne, one of the sure-

ties upon the note in question. Heisley was receiver of Alfred: H. Hagerman, and the inference is, from the meagre record in the case, that he had brought an action against Abram Osborne, a surety upon this note, to recover a share of the money which Alfred H. Hagerman had paid as a cosurety upon the note.

The record of that suit and the transcript of testimony taken therein were offered on the trial in the present case for the purpose of showing that in the first trial Alfred H. Hagerman had been decided to be a principal, and not a surety upon the note. The court overruled the offer upon the ground that the first case was tried by the court and the finding reduced to writing, and it had not been determined in that case: that the defendant was a principal.

I am not aware of any authority, judicial or legislative, by which the transcript of evidence would be receivable in evidence against an objection.

So far as the record of the former cause is involved in this assignment of error, there is nothing to show upon what ground the former adjudication rested. The record is not before us. The decision may have been upon the ground that Osborne had paid his portion, or that Hagerman had paid out of money of the principal, or upon some other ground not inconsistent with the recognition of the defendant's position as surety. The conclusion of the trial court, to the effect that it did not appear that the same point was involved and decided in the former action, must be accepted as true.

But even had it appeared that the judgment in the action brought by the receiver rested upon the ground that Alfred H. Hagerman was a principal, I am not prepared to assent to the notion that such a determination excluded the latter person from litigating the point anew in the present action.

The plaintiff in the present action was not a party to the former action, nor was he in privity with or a representative of a former party.

He would not be concluded by the judgment, and the essential element of mutuality required to support every estoppel

by record relieves the present defendant from any conclusive operation of the former adjudication. *Freeman on Judgments*, ¶ 159. There is no error apparent in the refusal to charge as requested upon this point.

The third assignment of error is based upon the court's refusal to charge that when a partnership is known notice of dissolution is required, or one partner can bind another. This request was refused because the legal rule thus propounded was not, in the opinion of the trial court, involved in the cause. The evidence in view of which this request was made appears in the testimony of the defendant and of his son. It is, in substance, that these two had been partners in business up to January 1st, 1887, at which date the partnership was dissolved, and the arrangement entered into between themselves at the time of dissolution was that the son should take assets and assume the liabilities of the firm.

The note seems to have been made to Mrs. Van Benthuysen about a month after the date of dissolution, and the money received through the use of the note was used by Joseph G. Hagerman, the son, in paying the liabilities of the former partnership. In addition to this evidence the plaintiff testified that he had known of the existence of the partnership between Alfred H. and Joseph G. Hagerman. The view which induced the last-mentioned request to charge seems to have been that inasmuch as the plaintiff had known these parties as partners, he therefore had a right to suppose that they were still such, and had signed this note as such, and so were both principals upon it.

The first answer to such a position is that the note is not signed by them as a firm note, nor is there any evidence that either of them represented, directly or indirectly, that it was for the use of the firm.

The second answer is that as both persons who were members of the previous firm signed the note, there was no question as to the power of one to bind the other.

The fourth request to charge was that cosureties were entitled to the benefit of securities held by each other. This re-

quest was refused upon the ground that it had no application to the facts of the case. The correctness of the proposition stated in the request was not denied by the trial court. Nor can it be denied that not only in equity, but in a court of law, each surety is entitled to the benefit of any security which was held by a cosurety and which has been turned into money.

The rule adopted in the case of *Paulin* v. *Kaighn*, 5 *Dutcher* 480, was this: That if a surety held securities of the principal for his indemnification, and has turned them into money, it is to be considered as a payment of the debt by the principal, *pro tanto*.

In an action brought by the surety so indemnified, against a cosurety, for contribution, he must first give a credit upon the debt the amount realized from his collaterals. As a result it follows that such surety is liable to contribute his share of the balance due, to any other surety who has paid.

The question is whether there is anything upon the record which shows that the plaintiff had the right to invoke this legal rule. The record is not full in its disclosure of what occurred upon the trial, but I think that there appears enough to have made it proper for the trial court to direct the attention of the jury to the proposition contained in the request. The defence was that Alfred H. Hagerman, the defendant, was a surety upon the note, for his son, and that he had paid more than his aliquot portion of the debt. The plaintiff would have been entitled to recover upon either of two grounds, namely, that the defendant was a principal or that he was a surety. His recovery upon the first ground would have been for the entire amount which he, the plaintiff, had paid. His recovery upon the second ground would have been limited to an aliquot portion of what he had paid.

It was incumbent upon the defendant, in his contention that he was surety merely, to show that he had paid his portion of the debt. He claimed that payment of his share had been made by the sale of the chattels which were sold as the property of the defendant and realized the sum of $750.

This was, *pro tanto*, a payment of the judgment into which the debt had merged.

If these chattels were absolutely the property of the defendant, then the money realized from them was his, and the payment enures to his benefit only. But from the record it is apparent that it was made a question at the trial whether the transfer of these chattels to the defendant by his son was not for the purpose of indemnification against the liability of the former for this debt. And I think that there was that in the case which made this a proper question for submission to the jury.

At the trial the defendant and his son were witnesses to prove the payment by the defendant of the $750 through the sale of defendant's chattels in the way already indicated. The defendant swore that the transfer of these goods was not on account of this note. On cross-examination he admitted that he had been a witness in the former suit of Heisley, Receiver, *v.* Osborne, and testified in a way that leaves an impression that while nothing was spoken between himself and son at the time of the transfer about the note, yet it was tacitly understood that the transfer was the result of his liability for the partnership debt which his son had assumed and for the payment of which the note was made. The son was also confronted with his testimony in the former case, which he admitted was correct. In that testimony he said that he did not remember that anything was said about what the bill of sale was given for at the time it was made. He said that he did not execute a bill of sale to his father at the time he turned over the goods, but after they got embarrassed then he gave him a bill of sale because he had endorsed for this, and because he, meaning his father, had given a mortgage upon the property. There was no evidence in respect to the consideration which his father paid or was to pay for this property.

The case seems to present this matter in such a shape that I think if the jury had found that these goods were only held by the defendant as security for his signature upon the note, there would be sufficient evidence to support the verdict. If

that question of fact was in the case, then the instruction prayed for, although in a very abstract form, was, in the absence of any more specific instruction, improperly refused.